UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Blaylock,

Plaintiff,

v.

James J. Hynes,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-180 ADM/AJB

---

James J. Galman, Esq., Lawrence M. Rocheford, Esq., and Marlene S. Garvis, Esq., Jardine, Logan & O'Brien, P.L.L.P., St. Paul, Minnesota, appeared for and on behalf of the Plaintiff.

William A. Cumming, Esq., Moss & Barnett, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

The above-titled matter came on for hearing before the undersigned United States District Judge on May 3, 2000, pursuant to Plaintiff Michael Blaylock's ("Blaylock") motion to remand [Doc. No. 14] and Defendant James J. Hynes' ("Hynes") motion for summary judgment [Doc. No. 5]. The parties dispute whether Blaylock's claims were properly removed to federal court and, if jurisdiction is proper, whether the Employee Retirement Income Security Act of 1974 ("ERISA") preempts Blaylock's state-law claims for fraud, reckless and negligent misrepresentation, violations of the Minnesota Consumer Fraud Act, and the Minnesota Regulation of Trade Practices Act. For the reasons set forth below, Blaylock's motion to remand is granted. Hynes' motion for summary judgment is not addressed.

JUN 2 1 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JUN 2 1 2000
DEPUTY CLERK

## II. BACKGROUND

### A. Parties

Plaintiff Blaylock, a Burnsville, Minnesota, resident, is president and part owner of Blaylock Plumbing. He is eligible for participation in employee benefit plans managed by the Twin City Pipe Trades Service Association ("Association") and is a participant in the Twin City Pipe Trades Welfare Plan ("Welfare Plan"). He has multiple sclerosis ("MS").

Hynes, the Defendant, is Executive Administrator of the Association, a non-profit corporation that provides administrative services to three employee benefit plans established for union members employed in the pipe trades industry. Hynes is responsible for determinations on eligibility, participation, benefits, and claims for the Welfare Plan. The Welfare Plan is a self-funded welfare benefit plan that provides health care insurance to participants. It is operated and maintained pursuant to ERISA.

### B. Factual Background

Prior to January 1, 1997, Blaylock independently purchased health insurance from Federated Mutual Insurance Company, which covered all claims relating to Blaylock's care and treatment for MS. See Affidavit of Scott M. Flom ¶ 6. In the spring of 1996, Blaylock received a letter from a union official stating that he was eligible to participate in the Association's plans. See Affidavit of Michael Blaylock ¶ 3. Blaylock contacted Hynes and asked whether he could participate in the union's pension plan. Hynes responded that Blaylock would be required to participate in both the pension plan and the Welfare Plan. See id. ¶ 4. Blaylock also told Hynes about his MS condition and asked whether he would be eligible for full health care coverage without restrictions. Blaylock contends that Hynes told him he would have full coverage and did

not mention he would be subject to a preexisting condition limitation. See id. ¶ 5. Blaylock began participating in the Welfare Plan on January 1, 1997, and cancelled his coverage through Federated Mutual Insurance Company with the expectation that the Welfare Plan would cover all claims relating to his MS treatment. See id. ¶ 8.

In the fall of 1998, Blaylock incurred medical expenses of $15,017.76 for treatment of a urinary tract infection resulting from an implanted catheter. See Affidavit of Marlene S. Garvis ¶ 2. The Welfare Fund, contending the medical bills related to Blaylock's preexisting MS, denied coverage. See id. ¶ 3. Blaylock appealed the denial to the Twin City Pipe Trades Board of Trustees. The Board agreed to pay the expenses, but only a portion of subsequent specific payment requests have been paid. See id. ¶¶ 5, 7. Blaylock has not been reimbursed for about $4,000 of the medical bills. See id. ¶ 8. Hynes contends Blaylock's claims have been paid according to the terms of the Welfare Plan, which limits benefits for preexisting conditions to $5,000 per year.

**C. Procedural Background**

Blaylock filed this suit in Ramsey County District Court, claiming fraud, reckless and negligent misrepresentation, violations of the Minnesota Consumer Fraud Act, and the Minnesota Regulation of Trade Practices Act. Blaylock seeks to recover damages, including "monies paid, due and owing for medical expenses," resulting from Hynes' alleged misrepresentation. Complaint ¶ 22. Blaylock also seeks legal damages for future expenses he will incur because of his MS that would have been covered by his prior health insurance plan. See Complaint ¶¶ 27, 32. On January 25, 2000, Hynes removed the matter to this Court, contending the claims are preempted by ERISA.

## III. DISCUSSION

### A. Remand

#### 1. Statutory authority for remand

This case was removed pursuant to 28 U.S.C. § 1441(a), which allows a defendant to remove a matter from state court if it originally could have been brought in federal court. A case shall be remanded back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." 28 U.S.C. § 1447(c). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. See In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993). When reviewing a motion to remand, a court must resolve all doubts about federal jurisdiction in favor of remand. See id.

Hynes alleges this Court has subject matter jurisdiction for two reasons: (1) because ERISA preempts the state claims, and (2) because ERISA provides a cause of action for Blaylock's claims. Blaylock contends that his claims are based solely on state statutory and common law, which have no effect on the ERISA-regulated Welfare Plan. Blaylock argues this Court lacks subject matter jurisdiction and must grant his motion to remand.

#### 2. The Doctrine of Complete Preemption

Two very different forms of preemption arise in the ERISA context, and it is not unusual

for parties and even the federal judiciary to be confused about the difference.[1] On a motion to remand, a court must consider whether the state claims that were removed to federal court are properly in federal court. This is a question of subject matter jurisdiction. In the removal context, a court must determine whether a state claim is removable under the doctrine of "complete" preemption, an exception to the well-pleaded complaint rule. Determining whether a state claim is nullified by "ordinary" preemption, which is used as an affirmative defense, is a separate analysis to be done once jurisdiction is established. See Tovey v. Prudential Ins. Co. of Am., 42 F. Supp.2d 919, 921- 25 (W.D. Mo. 1999).

The two preemption concepts are analytically different. "Complete preemption . . . has jurisdictional consequences that distinguish it from preemption asserted only as a defense. The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim." Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996) (discussing the doctrine of complete preemption in the context of the Indian Gaming Regulatory Act). The Ninth Circuit in Whitman v. Raley's Inc., 886 F.2d 1177 (9th Cir. 1989) addressed the distinction this way:

> This jurisdictional issue of whether 'complete preemption' exists is very different from the substantive inquiry of whether a 'preemption defense' may be established. The jurisdictional question concerning 'complete preemption' centers on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the plaintiff's complaint identifies only state claims. The latter inquiry, concerning a 'preemption defense,' is a substantive inquiry as to whether a legal defense exists. This would be a matter for trial by a

[1]Another district court has noted confusion on the part of the Eighth Circuit Court of Appeals by calling the ERISA preemption jurisdictional analysis in both Wilson v. Zoellner, 114 F.3d 713 (8th Cir. 1997) and in In Home Health v. Prudential Ins. Co. of Am., 101 F.3d 600 (8th Cir. 1996) "circumspect." See Tovey v. Prudential Ins. Co. of Am., 42 F. Supp.2d 919, 921 n.1 (W.D. Mo. 1999).

> court having jurisdiction. The possible existence of a 'preemption defense' does not justify removal.

Id. at 1181; see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S.Ct. 1542, 1548 (1987) ("[E]ven an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction.").

Generally, a complaint may not be removed from state court unless it could originally have been filed in federal court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987). Under the well-pleaded complaint rule, federal question jurisdiction exists only if the federal question is presented on the face of the complaint. See id. A case may not be removed on the basis of a federal defense, such as preemption, even if the defense is anticipated in the complaint and both parties concede that it is the only question at issue. See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847 (1983). A exception to the well-pleaded complaint rule is the doctrine of complete preemption. This doctrine applies where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546. Removal is proper when Congress clearly manifests its intent to make such causes of action removable. See id. at 1548.

The Supreme Court has extended the doctrine of complete preemption to actions under § 502(a) of ERISA, the statute's civil enforcement provision, codified at 29 U.S.C. § 1132(a). See Metropolitan Life, 481 U.S. at 66, 107 S.Ct. at 1548. The Court held that Congress "has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." Id. Thus, even when a plaintiff asserts only

state-law claims, a case is removable to federal court if the claims fall within the scope of § 502(a). See id. Furthermore, complete preemption "also limits claims and remedies exclusively to those provided by section 502(a)." See Hull v. Fallon, 188 F.3d 939, 942 (8th Cir. 1999). Therefore, if Blaylock's state-law claims fall within the scope of § 502(a), they are necessarily recharacterized as claims arising under that provision.

The pertinent part of ERISA's civil enforcement provision states:

> A civil action may be brought –
> (1) by a participant or beneficiary –
> . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
> . . .

29 U.S.C. § 1132(a). This provision gives Blaylock two possible routes: (1) a suit under § 502(a)(1)(b) for benefits denied to him under the terms of the written plan or to clarify future rights and (2) a suit under § 502(1)(3)(B) to obtain equitable relief for a breach of fiduciary duty by Hynes. With the first route, "[r]elief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53, 107 S.Ct. 1549, 1556 (1987). With the second route, "'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title' [is] broad enough to cover individual relief for breach of a fiduciary obligation." Varity Corp. v. Howe, 516 U.S. 489, 510, 116 S.Ct. 1065, 1076

(1996).

To determine whether state-law claims fall within the scope of the provision, a court must first discern whether the plaintiff is eligible to bring a claim under the section. See Tovey, 42 F. Supp.2d at 925. The parties here do not dispute that the Welfare Plan is governed by ERISA. Hynes is administrator of the plan, and thus a fiduciary within the meaning of the ERISA statute. Blaylock is currently a plan participant and would have standing to sue under § 502(a)(1)(B) for a denial of benefits. Blaylock would not have standing, however, if suit were brought under § 502(a)(3). Section 404 of ERISA requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries" of the plan. While other circuits have held that "[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA," Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co., 698 F.2d 320, 326 (7th Cir. 1983), the United States Supreme Court has not reached the question "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." Varity, 516 U.S. at 506, 116 S.Ct. at 1075. Regardless, Blaylock was not a participant of the Welfare Plan at the time Hynes made his alleged misrepresentations of the extent of the plan's health coverage. Blaylock would not have standing to make a claim under § 502(a)(3), given that Hynes owed a fiduciary duty solely to the participants and beneficiaries of the Welfare Plan at the time. See 29 U.S.C. § 1104(a)(1).

After standing is established, a court must then determine whether the subject matter of the plaintiff's state law claim falls within the scope of § 502(a). See Tovey, 42 F. Supp.2d at 925. In the instant case, the question is whether Blaylock is seeking to recover benefits, enforce rights, or to clarify rights to future benefits pursuant to § 502(a)(1)(B). In Hull, the Eighth

Circuit held that if the "essence" of a plaintiff's claim is that he was denied benefits from an ERISA plan, then the action falls within the scope of § 502(a). See Hull, 188 F.3d at 943. A court must look beyond the four corners of a plaintiff's pleadings to determine whether plaintiff, through artful pleading, seeks to deny the defendant's right to a federal forum. See id. at 942 n.5 (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424 (1981)).

Blaylock's claims for fraud, reckless misrepresentation, and negligent misrepresentation[2] are grounded solely in state law and do not invoke the protections and regulations of ERISA. Blaylock does not seek to rewrite the terms of Welfare Plan or construe it in such a way that all his medical bills will be covered. It is undisputed that the written plan limits claims relating to a preexisting condition to $5,000, and Blaylock has continued to participate in the plan under those terms. If the Welfare Plan were to deny coverage when the limit has not been reached, then Blaylock would have a claim under § 502(a)(1)(B) because it would be an action "to recover benefits due to him under the terms of the plan." Similarly, Blaylock would have a claim under the federal provision if he and the plan were to dispute whether certain medical bills related to his MS because it would be an action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . . ." Neither of those factual scenarios is presented by the instant case. Blaylock seeks to recover damages for lost insurance coverage that allegedly resulted from Hynes' misrepresentations. The Welfare Plan could not be construed to compensate for the lost coverage because its written terms do not provide for it. A cause of action under § 502(a)(1)(B) -- which mentions the phrase "under the terms of the plan" no less

---

[2]Blaylock's claims under the Minnesota Consumer Fraud Act and the Minnesota Regulation of Trade Practices Act are for attorneys' fees and are derivative of the first three counts in his complaint.

than three times -- looks *only* to the terms of the written plan to determine the rights of the parties.

A third factor used in determining whether a state-law claim falls within the scope of § 502(a)(1)(B) is whether the state-law claims can be resolved without an interpretation of the plan documents. See Tovey, 42 F. Supp.2d at 925. Here, no interpretation of the plan documents is required because it is undisputed that the plan limits coverage for a preexisting condition. The parties do not dispute that Blaylock's MS is a preexisting condition within the meaning of the plan's terms, and Blaylock does not seek to amend the plan with this litigation.

In other cases, state-law claims such as misrepresentation have been completely preempted because they necessarily involved questions of plan interpretation. For example, in Shea v. Esensten, 107 F.3d 625 (8th Cir. 1997) ("Shea I"), the Eighth Circuit Court of Appeals affirmed the district court's ruling that a state fraudulent misrepresentation claim was completely preempted by ERISA. See id. at 627. The reasoning was that "[t]he outcome of Mrs. Shea's lawsuit would clearly affect how Seagate's ERISA-regulated benefit plan is administered . . . ." Id.[3] See also Thompson v. Gencare Health Sys., Inc., 202 F.3d 1072, 1074 (8th Cir. 2000) (state-law medical malpractice claim completely preempted because, in part, "ERISA afforded [plaintiff] a timely equitable remedy to review [defendant's] *interpretation* of the plan . . . ."

---

[3]The Eighth Circuit's preemption analysis in Shea I seems to focus on whether the state-law claims in the original removed complaint were substantively preempted. However, it cites to Metropolitan Life to determine that they were properly removed. See Shea I, 107 F.3d at 627-28. While effect on the administration of an ERISA plan is a factor to consider in an "ordinary" preemption analysis, reliance on Metropolitan Life in Shea I indicates it also may be a factor in removal analysis. Shea I supports the position that claims requiring interpretation of the written ERISA plan would "fall within the scope" of § 502(a). See Metropolitan Life, 481 U.S. at 66, 107 S.Ct. at 1548.

(emphasis added)). Such is not the case here. The outcome of Blaylock's state-law claims would not involve an interpretation of the Welfare Plan; nor would the outcome affect the administration of the plan in the future as to Blaylock or other participants. By arguing that "[n]owhere in Mr. Blaylock's Complaint is he seeking to recover benefits, enforce or clarify rights to benefits whether those are existing or future ERISA benefits," Blaylock concedes treatment related to his MS is not covered by the Welfare Plan beyond the $5,000 limitation. See Pl.'s Mem. Supp. Remand at 4.

Blaylock is not suing the plan itself for benefits; instead, he seeks to hold Hynes *personally* liable for damages allegedly incurred by his reliance on Hynes' misrepresentations. ERISA's civil enforcement provision does not provide a federal cause of action for such a claim. Thus, Blaylock's state-law claims are not completely preempted and must be remanded to state court for lack of federal subject matter jurisdiction.

**B. Summary Judgment**

Given the lack of subject matter jurisdiction, Hynes' motion for summary judgment is not reached. The Court notes, however, that "ordinary" ERISA preemption under § 514, codified at 29 U.S.C. § 1144(a), is not limited to application within the federal courts. Lack of removal jurisdiction does not preclude the possibility of substantive ERISA preemption in state court. Whether Blaylock's state-law claims "relate to" an employee benefit plan covered by ERISA is a question that remains for the state court to determine. See Tovey, 42 F. Supp.2d at 924 ("The preemptive scope of ERISA is a substantive issue that should be determined only by a court of competent jurisdiction -- in this case, the state court.").

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to remand [Doc. No. 14] is **GRANTED**;

2. This action is **REMANDED** to Ramsey County District Court, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 21, 2000

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or
2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or
3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or
4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.